UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORIELLE JOHNSON,

  Plaintiff,

v.                  Case No. 2:13-cv-334
                     HON. GORDON J. QUIST
JAMIE PANCHERI, et al.,

  Defendant.
_____/

## REPORT AND RECOMMENDATION

  Plaintiff Corielle Johnson, an inmate currently confined at the Marquette Branch Prison (MBP), filed this action pursuant to 42 U.S.C. § 1983 against Michigan Department of Corrections employees Corrections Officer Pancheri, Nurse Montgomery, Corrections Officer Kangas, Sergeant Hoult, and Psychologist Amy Robare. Plaintiff alleges that Defendant Kangas retaliated against him and racially discriminated against him by calling him derogatory names. Plaintiff alleges that Defendant Pancheri became upset when Plaintiff failed to masturbate for Defendant Pancheri in exchange for a sack of pills that Defendant Pancheri gave Plaintiff. Defendant Pancheri demanded that Plaintiff return the pills. Plaintiff alleged that he overdosed on pills and as a result was taken to the emergency room at an outside hospital on April 22, 2014. As a result, Plaintiff was placed on observation status.

  Defendant Kangas allegedly overheard Plaintiff speaking to other inmates about filing a grievance on another officer. As a result, Defendant Kangas called Plaintiff names and turned on a fan in the hallway that was too loud. Plaintiff alleges that he also received a food tray that had metal shavings in the food. He asked Defendant Pancheri to call a sergeant, but Defendant

Pancheri failed to call a sergeant. Plaintiff had to wait until the next shift before he was able to speak to a sergeant to review a disobeying a direct order misconduct ticket which resulted in Plaintiff receiving seven days of foodloaf.

Plaintiff asserts that on April 24, 2012, Defendant Amy Robare visited him about being on "suicide." Plaintiff alleges that he informed her he wanted to die and was going to hang himself. Defendant Robare took Plaintiff off one-on-one suicide watch and placed him on fifteen minute observation. Plaintiff found a rope, made a noose, and hung himself from the sprinkler pipe in his cell. Corrections Officer Davis responded and tried to talk Plaintiff down unsuccessfully. Defendant Hoult arrived and stated "step up on the toilet." Then he sprayed chemical agent at Plaintiff. Plaintiff claims that he was grabbed, banged in the head twice, and thrown to the floor. Plaintiff claims that he felt multiple stomps to his back, ribs and stomach. Plaintiff was dragged into the hallway and a knee was placed on his chest. Defendant Hoult ordered Plaintiff to get up and walk backwards. Plaintiff asserts that there existed no reason for Defendant Hoult to use chemical agents or force. Plaintiff claims that the excessive force used violated his Eighth Amendment rights and was retaliatory. Plaintiff claims that Defendant Robare disregarded Plaintiff's suicide threats and subjected him to unnecessary harm by removing him from the one-on-one watch.

Plaintiff claims that Defendant Montgomery then placed Plaintiff in a cell that was flooded with water and urine. Plaintiff was provided no mattress, blanket or suicide gown. Plaintiff claims that the water was turned off, so he was unable to flush the chemical agent out of his eyes. Plaintiff claims that Defendant Montgomery retaliated against him because Plaintiff had previously claimed that he overdosed causing Defendant Montgomery to send Plaintiff to the Emergency Room, and that Defendant Montgomery committed racial discrimination against him.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Kangas argues that Plaintiff's retaliation claim against him should be dismissed because talking with another inmate about filing a grievance is not protected conduct and turning on a loud fan and name calling is not adverse action which could rise to the level of a retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights

violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). In the opinion of the undersigned, the alleged comments that Defendant Kangas made to Plaintiff and the act of turning a fan on in the hall outside Plaintiff's cell cannot be considered adverse conduct or retaliatory conduct for Plaintiff's action of conversing with other inmates about filing a grievance against another corrections officer. Similarly, to the extent that Plaintiff may be asserting a retaliation action against Defendant Pancheri, Plaintiff has failed to show that Defendant Pancheri took any adverse action against Plaintiff in response to protected conduct that Plaintiff might have taken.

Plaintiff alleges that Defendants engaged in racial discrimination by calling him derogatory names. Claims of abusive language, or of general harassment, do not state an Eighth Amendment or substantive due process violation. *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn., 1994); *Banks v. Klapish*, 717 F. Supp. 520 (W.D. Mich. 1989); *Gilson v. Cox*, 711 F. Supp. 354 (E.D. Mich. 1989); *Rahman v. Stephenson*, 626 F. Supp. 886, 888 (W.D. Tenn. 1986). Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985). However, the Sixth Circuit has suggested that a pattern of racial

harassment involving racial slurs may violate the Equal Protection Clause. *Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993). *Cf. Scott v. Davis*, No. 84-5870, 1985 WL 13447 (6th Cir., June 14, 1985) (unpublished, copy attached) (racial slurs do not give rise to Section 1983 liability). Plaintiff has not shown a pattern of racial harassment that could rise to the level of supporting an Eighth Amendment claim. In the opinion of the undersigned, Defendant Kangas and Defendant Pancheri should be dismissed from this action.

Defendants move for qualified immunity on Plaintiff's remaining Eighth Amendment claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly

established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Plaintiff claims that he was subjected to unnecessary force when Defendants removed him from his cell after he hanged himself from the water pipe in his cell. Plaintiff asserts that he was struck on the head and stomped upon. Further, Plaintiff claims that a chemical agent should never have been used, since he was hanging from the pipe with a noose around his neck and not a threat to the officers who responded. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Plaintiff claims that Defendant Hoult's use of a chemical agent was a violation of Plaintiff's rights. Plaintiff claims that he was not a threat and was not able to assault the officers because he was attempting to commit suicide by hanging himself. The Critical Incident Report states in part:

> Prisoner Johnson ... was hanging in his cell from the sprinkler pipe using a homemade rope. Sgt. Hoult called on the radio that staff assistance was needed in Delta Block. As Sgt. Hoult arrived at DB11 he saw prisoner Johnson hanging from a rope wrapped around his neck and attached to the water pipe. Sgt. Hoult gave loud verbal commands to prisoner Johnson to stand on his toilet to relieve pressure on the rope. At no time did he comply with the order given by Sgt. Hoult and he continued to hang. With prisoner Johnson continuing to hang a spontaneous cell entry was necessary to prevent the prisoner from further self injury, and to prevent staff from injury in the event the prisoner was being manipulative, as the prisoner was conscious, Sgt. Hoult administered personal chemical agent. . . . Once the chemical agent had been administered C/O Davis . . . opened the cell door to DB11 and C/O Bush . . . and C/O Keith Ginn . . . entered the cell to restrain and cut down prisoner Johnson.

Brief in support of Defendants' Motion for Summary Judgment, Docket #36, Ex. D.

Plaintiff explained at his deposition:

A. Yeah. The –like, I think six officers or four officers and Sergeant Holt came. I remember Sergeant Holt came in, I heard a lot of people in there. Holt was telling me to, 'Step up on the toilet; step upon the toilet.' And then I, like, opened my eyes, and he had the gas pointed at my face, and he just sprayed the gas all in my face.

- 7 -

> Q. Is this sergeant Holt you're talking about?
>
> A. Yeah.
>
> Q. When he instructed you to step on the toilet, did you do that?
>
> A. No, I couldn't do it. I thought I was trying to do it. I thought I was trying to do it, but obviously I couldn't do it because I couldn't get no – like, I couldn't get my foot on anything.

Docket #36, Ex. A at 15.

Plaintiff further explained:

> Holt. He had his hand through the bars when he wrapped around the gas with his thumb ready to press it. And when I opened my eyes, he just shot the liquid all over my face. And I heard the – he just was spraying it for a long time. They was already rolling the breaker, and I heard the officers say, "What the . . . ." And that's when I heard the door bang open, like, bang, and that's when they grabbed me. And I felt them pulling on me. And then the rope popped and I got my head banged up on the light like two times, and then I was slammed on the floor –

*Id*. at 18-19. Plaintiff stated that one of the guards trying to take him down got sprayed in the face with the gas. *Id.* at 20. Further, Plaintiff stated that although he has a history of assaulting guards he never assaulted a guard at MBP. *Id*. One of the officers informed him that the policy required them to use a chemical agent. *Id*. at 27.

There is no doubt that an officer may use a chemical agent when it is used in a "good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7. The use of a chemical agent, while unpleasant, can be the least restrictive manner to subdue an inmate in the manner that is the least harmful to the inmate and the officers involved. In this case, Plaintiff was admittedly conscious when Defendant Hoult ordered him to step onto the toilet. Plaintiff did not comply, so a chemical agent was used at about the same time that officers entered the cell to remove Plaintiff.

It is clear that even the officers that were inside the cell were subjected to the chemical agent. The use of the chemical agent, in the opinion of the undersigned, was objectively reasonable. Plaintiff admitted that he had previously assaulted seven or eight guards. Docket #36, Ex. A at 20. Plaintiff also admitted that he uses suicide attempts to manipulate staff. Plaintiff stated: "And, like, like I said, I do a lot stuff here. Like I told you, I be overdosing on pills. And then when you overdose and you do it the right way, you end up in the hospital, like, three or four days." Docket #36, Ex. A at 22.

Similarly, Plaintiff's claims that corrections officials used excessive force by beating him while cutting him down from the rope and removing him from his cell are not supported in the record. Plaintiff did not receive any injuries and received immediate medical care. The Prisoner Injury Report signed by RN Seigneur states:

> Report of hanging and post chemical agent exposure. No visible neck injury, resp effort is unlabored and easy. Rate 18-20. No stridor. Does repeatedly ask for cool cloth for face and eyes. Have provided repeated cool tap water to face and eyes. . . . Cool tap water to face and eyes several times. Lungs clear. No resp distress. Voice is his normal.

Docket #36, Ex. D.

Plaintiff stated during his deposition that he received good treatment from the medical staff.

> A. Well, they took care of me over there. I didn't get my head bust open or nothing like that. But when I was over there –
>
> Q. So you didn't receive any medical treatment for the head banging?
>
> A. Yeah. They took care of me. They gave me, like – like, I think it was a day after that they was giving me Tylenol, they was able to give me ointment for my eyes, saline for my eyes. The nurses over there, they took good care of me while I was over there for that little two-and-a-half weeks. So I didn't have to put in no kite. All I had to

>
> do was call a nurse and they would come, and I'd tell them what's wrong with me.
>
> Q. Okay. So you feel you were treated fairly well when you were in unit 5 – or Ward 5?
>
> A. Yeah. . . .

Docket #36, Ex. A at 43-44.

Plaintiff claims that after the incident he was placed in a cell by Defendant Montgomery that was flooded with water and urine, had no running water, and was not given an adequate gown or blanket to cover himself. Plaintiff was given two suicide gowns. Soon after, however, Plaintiff admits that he received two heavier gowns and two blankets. Docket #36, Ex. A at 41. Plaintiff has presented no factual evidence that he was placed in a flooded cell. Moreover, allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). Further, Plaintiff's unsupported retaliation and race discrimination claims against Defendant Montgomery should be dismissed. In the opinion of the undersigned, Defendant Montgomery should be dismissed from this action.

Plaintiff alleges that Defendant Robare was deliberately indifferent to his mental health needs when she moved Plaintiff from constant observation to having guards check Plaintiff every 15 minutes. Plaintiff states that he told Defendant Robare that he would commit suicide and made a gesture to her that he would hang himself. Defendant Robare indicated in answers to

interrogatories that Plaintiff made a hanging gesture that was witnessed by staff on April 24, 2012. Defendant Robare denies that Plaintiff ever told her that he was suicidal or would attempt to hang himself. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

In the opinion of the undersigned, there exists no evidence which could show that Defendant Robare acted with deliberate indifference to Plaintiff when she moved him from constant observation status to a 15 minute observation status. In fact, the evidence supports a conclusion that Plaintiff's attempt to hang himself was more an act of manipulation and attention seeking rather than a true attempt to harm himself.

For these reasons, it is recommended that the court find that Defendants are entitled to the defense of qualified immunity because their actions were not objectively unreasonable in light of the clearly established law.

Plaintiff has moved to amend his complaint to add new defendants to this action that were involved in removing him from his prison cell after they entered the cell and restrained Plaintiff. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ.

P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). The court must have knowledge of the substance of the proposed amendment to determine whether "justice so requires" an amendment. *Roskam Baking Co v. Lanham Machinery*, 288 F.3d 895, 906 (6th Cir. 2002). The court does not abuse its discretion by denying an amendment where the plaintiff has failed to submit a proposed amended complaint. *Id.* Where discovery was closed, and the plaintiff requested to add new causes of action and new parties, without explanation for the delay in bringing the motion to amend the complaint, it was not an abuse of discretion to deny the plaintiff's motion to amend. *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992). For the reasons stated, it is recommended that the court deny Plaintiff's motions for leave to amend his complaint because Plaintiff cannot support his Eighth Amendment claims that he was subjected to excessive force.

    In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #35) be granted and this case be dismissed in its entirety. It is further recommended that Plaintiff's motions for leave to amend his complaint (Docket #38 and #52) be denied.

    Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' Motion for Summary Judgment, the

undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 11, 2015